UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

RECEIVED
US DIST CLERK GREENVILLE, SC
2017 MAR 31  PM 4: 27

| | |
|---|---|
| James John Todd Kincannon,<br><br>              Plaintiff,<br><br>v.<br><br>Nicole Howland in her personal capacity;<br>Anonymous Media Sources as described<br>herein; William R. Folks, III; Fitsnews,<br>LLC; FITSNews, INC.;<br><br>              Defendants. | Civil Action No. __:__-CV-_____-___<br><br><br>**COMPLAINT**<br>**(Jury Trial Demanded)** |

## STATEMENT OF THE CASE

1.     In the past, unethical law enforcement officers who thought a particular person needed to be "taught a lesson" were known employ violence for this purpose, but violence was never the only tool so employed. In modern times, violence seems to be less popular than it once was this purpose. That does not mean "lessons" are no longer taught to disfavored persons by unethical law enforcement officers, it simply means that such lessons are often delivered using non-violent means.

2.     This action involves precisely that situation. Instead of violence, sheriff's department employees sought to "teach Plaintiff a lesson" by leaking to media a fabricated claim that Plaintiff was the target of a felony kidnapping investigation and his indictment and arrest for felony kidnapping were both imminent. All of this was false.

## PARTIES, VENUE, AND JURISDICTION

3.     Plaintiff James John Todd Todd Kincannon is a citizen of South Carolina.

4.     Defendant Nicole Howland is a citizen of South Carolina sued strictly in her personal capacity.

5.    Defendants identified as "Anonymous Media Sources" are the anonymous sources for defamatory claims that Defendant had committed the serious felony of kidnapping and his charge and arrest on that crime were imminent. These claims were published in an online media article called "the Kidnapping Article" herein and described below. The Kidnapping Article identifies these anonymous sources by description only, indicating they are persons who employed by or are otherwise in league with the Lexington County Sheriff's Department. The Kidnapping Article indicates there are multiple sources but does not state how many. Plaintiff has since determined on the basis of additional information provided by the publisher of the article that one of the anonymous sources is Defendant Nicole Howland. Plaintiff does not know the names of the others at present, intends to discover their identities at the outset of litigation from the publisher, and will immediately seek to amend the Summons and Complaint upon learning the names of these persons.

6.    Plaintiff has made all diligent efforts possible to determine the names of the anonymous sources prior to filing this action, but as is often the case with anonymous sources for defamatory claims in media publications, Plaintiff has been unable to obtain information satisfactory to give Plaintiff a good faith basis to name any of these sources other than Defendant Howland. Plaintiff also suspects that Defendant Howland may be the only source and the claim of multiple sources is a fabrication by the publisher intended to imbue the false and defamatory claims with greater reliability, a tactic Plaintiff is aware the publisher has used in the past in other unrelated articles.

7.    The "Anonymous Media Sources" designation includes all persons who engaged in actionable conduct with respect to the anonymous transmission of the defamatory and

false claims regarding Defendant that appeared in the Kidnapping Article. It is of course possible that more persons were involved beyond merely the particular person(s) who spoke to the publisher. The "Anonymous Media Sources" includes anyone who may have directed the source(s) to transmit the defamatory and false information to the publisher or otherwise aided and abetted the anonymous transmission of defamatory and false information in an actionable way. Although Plaintiff believes all anonymous defendants were Lexington County Sheriff's Department employees, the "Anonymous Media Sources" designation would include anyone not an employee of the Lexington County Sheriff's Department who was acting at the direction of, or with the intent to aid and abet, the agent or agents of the State who sought the publication of the defamatory and false claims that appeared in the Kidnapping Article.

8.    Defendants Howland those designated as Anonymous Media Sources will be collectively referred to as the "Source Defendants."

9.    Defendant William R. Folks, III is a citizen of South Carolina and the author of the Kidnapping Article, the proprietor of FITSNews.com (the media entity that published the article), and the person who directly communicated with the anonymous source(s) for the article.

10.    Defendants Fitsnews, LLC and FITSNews, INC. are the business entities associated with FITSNews.com. Plaintiff does not know, and the FITSNews.com website does not apparently describe, the precise ownership structure of the FITSNews.com media entity. It would appear that both play some role in ownership and management and that both are proper defendants to this action.

11.    Defendant Fitsnews, LLC is a limited liability company organized under the laws

of the State of South Carolina with a principal place of business in South Carolina. The registered agent of Defendant Fitsnews, LLC is William R. Folks, III (also a defendant in this action), whose address is 1601 Hagood Avenue, Columbia, South Carolina 29204. Defendant Folks is the de facto and, probably, the de jure chief executive officer of Defendant Fitsnews, LLC.

12.    Defendant FITSNews, INC. is a corporation whose jurisdiction of incorporation is unknown to Plaintiff but is a jurisdiction other than South Carolina with a principal place of business in South Carolina. Upon information and belief, the registered agent of Defendant FITSNews, INC. is also Defendant Folks. Defendant Folks is the de facto and, probably, the de jure chief executive officer of Defendant Fitsnews, LLC.

13.    Defendants Folks, Fitsnews, LLC, and FITSNews, INC. will be collectively referred to as the "Publisher Defendants."

14.    An action against a media publication and its sources for the publication of defamatory and false information would ordinarily arise only under state law, but this case is different because the Source Defendants were employees or other agents of the Lexington County Sheriff's Department (an agency of the State of South Carolina) acting under color of state law whose conduct was intended to and did cause injury to the federally protected civil rights of Plaintiff (and other interests as well). Accordingly, the federal courts have subject matter jurisdiction over civil rights claims against the Source Defendants and state law claims that form part of the same case or controversy.

15.    Circumstantial evidence leaves no reasonable doubt that the Publisher Defendants willingly joined with the Source Defendants in their intentional efforts to cause tortious injury to Plaintiff and aided and abetted the Source Defendants in that effort. Publisher

Defendants knew or should have known that Source Defendants' conduct was intended to harm the federally protected civil rights of Plaintiff and are therefore also proper defendants to federal civil rights claims arising out of the incident. Even if Publisher Defendants did not have specific actual or constructive knowledge that the interests of Plaintiff's being tortiously harmed were federally protected civil rights, Publisher Defendants nonetheless manifested a general intent to aid Source Defendants in their efforts to harm Plaintiff through whatever means Source Defendants chose to do so, and Publisher Defendants are therefore jointly and severally liable on all claims properly asserted against Source Defendants whatever they may be.

16.     The subject matter jurisdiction of the federal district courts over federal civil rights actions seeking monetary relief under 42 U.S.C. § 1983 is granted by the federal question statute, 28 U.S.C. § 1331 and other federal statutes. The subject matter jurisdiction of the federal district courts over state law claims forming part of the same case or controversy as federal question claims is granted by the supplemental jurisdiction statute, 28 U.S.C. § 1367.

17.     Venue is proper in the District of South Carolina per multiple subsections 28 U.S.C. § 1391. All or practically all defendants are citizens of the State of South Carolina residing in the District of South Carolina and the claim arises out of acts and omissions committed exclusively or almost exclusively within the District of South Carolina.

18.     The Columbia Division is the proper division because the claim arises out of acts and omissions committed exclusively or almost exclusively within Lexington County, a county within the Columbia Division.

FACTS

19.     On March 31, 2015, at approximately 2:30 p.m., Defendants published an article at the website FITSNews.com falsely reporting that the Lexington County Sheriff's Department had determined that Plaintiff had committed the crime of kidnapping and had decided to charge Plaintiff for kidnapping, a serious felony under South Carolina law (and the law of every jurisdiction) punishable by up to thirty years in prison.

20.

## FOR A CAUSE OF ACTION
### LIBEL PER SE

21.     On March 31, 2015, at approximately 2:30 p.m., Defendants published an article at the website FITSNews.com falsely reporting that the Lexington County Sheriff's Department had determined that Plaintiff had committed the crime of kidnapping and had decided to charge Plaintiff for kidnapping, a serious felony under South Carolina law (and the law of every jurisdiction) punishable by up to thirty years in prison.

22.     This article (the "Kidnapping Article") is attached as Exhibit 1 and continues to be available at the following URL on the FITSNews.com website, as it has been at all times since original publication: http://www.fitsnews.com/2015/03/31/todd-kincannon-saga-kidnapping-charges-imminent/.

23.     Plaintiff was not charged with kidnapping and has never been charged with kidnapping or any other felony or serious crime, either stemming from the marital dispute referenced in the Kidnapping Article or otherwise. Neither the Lexington County Sheriff's Department nor any other law enforcement agency sought to procure Plaintiff's arrest or indictment for kidnapping or any other felony or serious crime or ever even considered doing so.

24.     This article was written by Defendant William R. Folks, III and published by

Defendants Fitsnews, LLC and FITSNews, INC.

25.     The sole sources for the defamatory information in the Kidnapping Article were anonymous persons associated with the Lexington County Sheriff's Department.

26.     Plaintiff communicated with Defendant Folks about the matter on the telephone on several occasions, and during these conversations Defendant Folks revealed enough specific personally identifying information about his sources to permit Plaintiff to identify one source, apparently the principle source, as Defendant Howland. (This assumes Defendant Folks was truthful with Plaintiff in his conversations, which should not necessarily be assumed.)

27.     Plaintiff expressly asked Defendant Howland if she was a source, and Defendant Howland refused to admit or deny the matter. There is no logical reason why Defendant Howland would not deny being a source if she was, in fact, not a source.

28.     Defendant Folks' private communications with Plaintiff seemed to indicate that Defendant Howland was his only source, which would mean Defendants Folks fabricated the claim of additional confirmatory sources in order to imbue Defendant Howland's allegations with a greater degree of reliability than they were due.

29.     Plaintiff is personally aware that Defendant Folks uses the tactic of claiming to have multiple sources for claim that he, in fact, only has a single source for. Plaintiff has personally observed Defendant Folks use this tactic in unrelated matters.

30.     Defendant Howland's actions were pursuant to part of and pursuant to an ongoing effort by elements within the Lexington County Sheriff's Department to harass and cause harm to Plaintiff through any means possible.

31.     Plaintiff's claim regarding the Lexington County Sheriff's Department

harassment tactics is not speculative. Plaintiff was recently subjected to a harassing traffic stop by officers of the Lexington County Sheriff's Department after appearing at a Lexington County magistrates court in order to review a casefile. Plaintiff was chased from the courthouse by sheriff's deputies who observed him there, pulled over, and harassed for a lengthy period of time. During this traffic stop, the Lexington County Sheriff's Department officers expressly told Plaintiff that certain powers-that-be within the department were out to get him and that the harassment would continue so long as Plaintiff did not refrain from constitutionally protected conduct in legal disputes with the department, including but not limited to Plaintiff's Internet postings regarding such matters that are constitutionally protected.

32.    This traffic stop occurred on March 21, 2017 and dash-cam recordings of the stop should have captured these comments by the sheriff's deputies to Plaintiff. Plaintiff has requested the dash-cam recordings and is entitled to them under Brady v. Maryland but the Lexington County Sheriff's Department has not yet turned them over.

33.    Plaintiff is certain that Source Defendants' conduct in procuring the publication of the Kidnapping Article was pursuant to the same harassment pattern based on the statements of the sheriff's deputies during the traffic stop and the obvious circumstantial connections between the incidents.

## FOR A FIRST CAUSE OF ACTION
### 42 U.S.C. § 1983

34.    Source Defendants' conduct, which was joined in and ratified by Publisher Defendants, violates Plaintiff's federally protected civil rights and caused (and continues to cause) harm to Plaintiff for which monetary damages are recoverable.

35.    Publication of false information that would ordinarily be actionable as defamation

is not actionable in a federal civil rights context unless it is intentionally calculated to cause harm to a federally protected civil right. The conduct complained of in this case was calculated to cause such harm and, in fact, did so.

36.     The conduct was intended in part to harm Plaintiff's constitutionally protected property interests to income derived from his practice of law by warding off clients from continuing to use Plaintiff as their attorney and scaring off prospective clients due to the apparent likelihood that Plaintiff's indictment for felony kidnapping was imminent, which would cause immediate ministerial suspension of his law license by the South Carolina Supreme Court that would continue indefinitely and last at least until the kidnapping charge was finally disposed of, a process that reasonable people know and anticipate will take quite some time in the usual case. This is actionable as a federal civil rights violation.

37.     The conduct was also intended to harm other interests that Plaintiff contends are federally protected interests. Plaintiff contends that the intentional and intentionally harmful publication by an agent of the State that a person is facing felony charges that the person is not in fact facing is itself actionable as a federal civil rights violation and all actual and proximately caused damages are recoverable.

38.     Although Plaintiff alleges reckless in the alternative, Plaintiff is certain that the conduct in this case by Source Defendants and, probably, by Publisher Defendants was intentional and intentionally harmful. This case is readily distinguishable from civil rights defamation claims arising from a government agent's accidentally false claim that a certain person had been convicted of a crime or something of that nature, which is the ordinary basis of civil rights defamation claims that are rejected (rightly) by federal

courts.

39.     Plaintiff suffered all sorts of injuries that are recoverable under ordinary tort theories described in Plaintiff's state law causes of action. Plaintiff contends they are also recoverable under a federal civil rights theory for the reasons stated.

40.     Plaintiff submits multiple provisions of the United States Constitution permit a civil rights claim on this basis, including but not necessarily limited to the substantive and procedural components of the Fourteenth Amendment Due Process Clause, the Fourteenth Amendment Equal Protection Clause, the Fifth Amendment prohibition on the taking of property without compensation or due process of law, and the Eighth Amendment prohibition on cruel or unusual punishment.

41.     The Eighth Amendment claim perhaps requires a bit of explanation. Source Defendants obviously sought to injure Plaintiff, at least in part, on account of their belief that Plaintiff had committed some sort of crimes that they could not charge him with or convict him of—crimes Plaintiff therefore "got away with." The intentional publication of false and defamatory information that Plaintiff was about to be indicted for felony kidnapping was a non-judicial punishment crafted by Source Defendants—agents of the State—to punish Plaintiff for crimes they believed he had committed. It was also a cruel and unusual punishment, obviously. Therefore it should be actionable on an Eighth Amendment theory.

42.     The fact that the cruel and unusual punishment imposed on Plaintiff by agents of the State under color of law for crimes Plaintiff allegedly committed was imposed outside of a prison with respect to matters for which Plaintiff was never convicted is irrelevant.

43.     If agents of the State captured Plaintiff and jailed him without a trial and tortured

him for crimes they believed he had committed, Plaintiff's Eighth Amendment rights would be violated despite the absence of any lawful criminal proceeding.

44.     The same is true in this case. Any cruel or unusual punitive conduct imposed by the State on an individual based on the State's belief the person committed a crime is a violation of the Eighth Amendment. The State cannot be "rescued" from the civil rights violation merely because its conduct was so outrageous that it occurred outside of a prison setting and even, in this case, outside of a criminal conviction or even the initiation of criminal proceedings.

45.     Plaintiff seeks all monetary recoveries available, including nominal, actual, and punitive damages.

## FOR A SECOND CAUSE OF ACTION
### LIBEL

46.     Publisher Defendants committed the tort of libel by publishing false and defamatory claims indicating agents of the State of South Carolina had determined Plaintiff committed the grievous felony of kidnapping and that his charge and felony arrest for kidnapping was imminent. This particular form of libel is actionable per se because it involves an allegation of a serious criminal offense.

47.     Source Defendants are jointly and severally liable with Publisher Defendants because Source Defendants procured the publication of the libel by Publisher Defendants, either by intentionally convincing Publisher Defendants to intentionally libel Defendant or by intentionally tricking Publisher Defendants into libeling Defendants.

48.     Even if Source Defendants' transmission of false information to Publisher Defendants was merely reckless or otherwise non-intentional, the anonymous source of a media publication obviously knows that information provided will be published in

written form and therefore constitute libel if it is false and defamatory.

49.     Plaintiff concedes he is a general purpose public figure but expressly alleges that all defamatory conduct by anyone who is a defendant in this action met the actual malice standard established by New York Times v. Sullivan, 376 U.S. 254 (1964). The Source Defendants obviously knew that Plaintiff's charge and arrest for the crime of kidnapping would require indictment by a grand jury under South Carolina law and also obviously knew that no grand jury proceedings had occurred or were contemplated, so even if the defamation was unintentional it was reckless or otherwise met the actual malice standard. Plaintiff believes the Publisher Defendants acted intentionally or recklessly or otherwise met the actual malice standard because the Publisher Defendants knew the Source Defendants' claims were either false or that the Source Defendants were acting with reckless disregard for the truth or otherwise met the actual malice standard.

50.     Defendants' conduct has caused Plaintiff severe reputational harm and other injuries for which recoveries are available in a libel action. Plaintiff seeks to recover nominal damages, actual damages (including but not limited to presumed damages), and punitive damages.

### FOR A THIRD CAUSE OF ACTION
SLANDER

51.     Source Defendants' private transmission of defamatory information to Publisher Defendants was also slander, although it became actionable as libel once published in permanent form in an article on the Internet. Nonetheless, Plaintiff also brings an action for slander strictly against Source Defendants and seeks to recover nominal damages, actual damages (including but not limited to presumed damages), and punitive damages.

### FOR A FOURTH CAUSE OF ACTION

INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

52.    Source Defendants' conduct was an intentional and successful effort to inflict emotional distress on Plaintiff in addition to causing him reputational harm.

53.    Source Defendants' conduct meets all elements for this tort under South Carolina law: (1) Source Defendants intentionally or recklessly inflicted severe emotional distress, or was certain, or substantially certain, that such distress would result from his conduct; (2) Source Defendants' conduct was so extreme and outrageous so as to exceed all possible bounds of decency and must be regarded as atrocious, and utterly intolerable in a civilized community; (3) the actions of Source Defendants caused Plaintiff's emotional distress; and (4) the emotional distress suffered by plaintiff was severe such that no reasonable man could be expected to endure it. Hansson v. Scalise Builders of South Carolina, 374 S.C. 352, 356, 650 S.E.2d 68, 70 (2007).

54.    Publisher Defendants had actual knowledge that Source Defendants' conduct was an intentional effort to cause Plaintiff emotional distress in a tortious and actionable manner, or Publisher Defendants acted with reckless disregard for whether Source Defendants' conduct would constitute actual intentional infliction of emotional distress. Despite this, Publisher Defendants willfully joined Source Defendants in their efforts and are therefore jointly and severally liable for intentional infliction of emotional distress.

55.    Plaintiff seeks to recover nominal damages, actual damages, and punitive damages.

## FOR A FIFTH CAUSE OF ACTION
RECKLESS INFLICTION OF EMOTIONAL DISTRESS

56.    To the extent Source Defendants' infliction of emotional distress was merely reckless and to whatever extent Publisher Defendants' liability for emotional distress is

premised on mere recklessness, Plaintiff brings a claim for reckless infliction of emotional distress and seeks to recover nominal damages, actual damages, and punitive damages.

## FOR A SIXTH CAUSE OF ACTION
### TORTIOUS INTERFERENCE WITH EXISTING CONTRACTUAL RELATIONS

57.    When the Kidnapping Article was published, Plaintiff was an active member of the South Carolina Bar, the bar of this Court, and other courts whose principal source of income was an active solo litigation practice in which Plaintiff represented members of the general public with respect to specific claims and cases for which he was retained.

58.    All defendants had actual knowledge of this and had actual knowledge that a felony indictment of any kind, for kidnapping or any other felony, would cause Plaintiff's law license to be automatically suspended by the South Carolina Supreme Court as a ministerial act.

59.    The South Carolina Supreme Court automatically suspends the law license of any member of the Bar indicted for a felony. Misdemeanor arrests do not cause automatic suspension and a single misdemeanor arrest unrelated to the practice of law never causes suspension.

60.    Plaintiff's arrest for any misdemeanor conceivably possible arising out of the marital dispute described in the Kidnapping Article could not have caused any suspension of Plaintiff's law license because it was entirely unrelated to the practice of law and would have been the first criminal charge of any kind against Plaintiff other than minor traffic infractions.

61.    Source Defendants and Publisher Defendants had actual knowledge that publishing a claim that Plaintiff was about to be charged with a felony citing reliable law

enforcement sources would trigger an ethical duty on Plaintiff's part to inform his clients of the possibility that he would be unable to continue as their counsel due to the likelihood that he would be indicted for a felony and automatically suspended.

62.    Upon Plaintiff's becoming aware of the publication of the Kidnapping Article, Plaintiff discharged his ethical duty to his clients and informed each of them that assuming the claimed in the Kidnapping Article were true—and Plaintiff believed them to be true, having no reason to believe otherwise—his clients should make contingency plans with regard to litigation they had intended Plaintiff to handle for them.

63.    Plaintiff lost multiple opportunities to do profitable work for clients as a result, as they chose not to have Plaintiff proceed in their matters in light of the uncertain status of Plaintiff's law license.

64.    Defendants' intended their publication of false information regarding kidnapping to have this effect, and it, in fact, did have this affect.

65.    Defendants' conduct is actionable as tortious interference with contractual relations under South Carolina.

66.    Plaintiff seeks to recover nominal damages, actual damages, and punitive damages.

67.    To the extent Plaintiff is unable to disclose specific information regarding client decisions due to the ongoing attorney-client privilege that attaches to such matters, Plaintiff submits that in a case of this particular nature, Plaintiff should be entitled to presumed damages as well. There are many situations where Plaintiff simply cannot provide specific information regarding a client's decisions without violating the attorney-client privilege which persists the termination of the attorney-client relationship.

## FOR A SEVENTH CAUSE OF ACTION
### TORTIOUS INTERFERENCE WITH PROSPECTIVE CONTRACTUAL RELATIONS

68.    Defendants not only intended to injure Plaintiff's contractual relationships with existing clients, Defendants intended to interfere with Plaintiff's ability to attract new business as well. Plaintiff likewise had an ethical obligation to disclose to prospective clients that if they chose him as their lawyer, there was a possibility of indictment for kidnapping based on Defendants' published claims to that effect and if that occurred, Plaintiff's law license would be suspended.

69.    Plaintiff's ethical disclosure obligations regarding the Kidnapping Article made it practically impossible for Plaintiff to attract new business as a lawyer and warded off numerous prospective clients that would have retained Plaintiff to do profitable work on their behalf.

70.    Defendants intended this result, which constitutes the tort of intentional interference with prospective contractual relations.

71.    Plaintiff seeks to recover nominal damages, actual damages, and punitive damages.

72.    Plaintiff likewise seeks presumed damages for the same reasons identified above.

### PRAYER FOR RELIEF

Wherefore, having fully pled the causes of action within the Complaint, Plaintiff demands a jury trial on all issues triable by jury and prays for a judgment against the Defendants for all damages and recoveries available, the costs of this action, and such other and further relief as the Court may properly order on these facts.

Respectfully submitted,

JAMES JOHN TODD KINCANNON
214 Jones Avenue
Simpsonville, South Carolina 29681
Phone: 864.963.4373
Email: ToddKincannon@gmail.com
Plaintiff Pro Se

March 31, 2017